

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 2, 2018

**BY ECF**

The Honorable Katherine P. Failla
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Michael Brandon*, 17 Cr. 710 (KPF)

Dear Judge Failla:

    The defendant in this case, Michael Brandon, is scheduled to be sentenced on March 9, 2018 at 3:00 p.m., having pled guilty to conspiracy to commit bank and wire fraud, wire fraud, bank fraud, and aggravated identity theft. The Government respectfully submits this letter in advance of the sentencing. Pursuant to a plea agreement between the parties, the United States Sentencing Guidelines ("Guidelines") range was calculated as 57 to 65 months' imprisonment, with a mandatory minimum term of two years' imprisonment. For the reasons set forth below, the Government submits that the applicable Guidelines range is 51 to 57 months' imprisonment, with a mandatory minimum term of two years' imprisonment, and that a sentence within that Guidelines range is warranted in this case.

    **A.  Offense Conduct**

    Michael Brandon used the personal identification information of real people—including their names, dates of birth, and social security numbers—to register sham corporations, open bank accounts in those companies' names, deposit stolen checks in those accounts, and withdraw the stolen funds. (U.S. Probation Office's Final Presentence Report, dated February 7, 2018 ("PSR"), ¶ 11). As part of the scheme, Brandon obtained checks that were stolen from law firms in New York. *Id.* ¶ 17. He gave those checks to his co-conspirators and to so-called "walkers"—individuals that the defendant and his co-conspirators recruited to deposit stolen checks at banks. *Id.* ¶ 13. Brandon and his co-conspirators were able to cash these checks by setting up bank accounts in names similar to the law firms and businesses from which the checks were stolen. *Id.* ¶ 17. For example, if a member of the conspiracy stole checks from Jones & Smith LLP (the name of a fictitious law firm used here to protect the identity of the victim firms), a member of the conspiracy would have opened a bank account in the name Jones & Smith LLC to trick a bank into cashing the checks. *Id.* Those accounts were often set up using counterfeit identifications made using the stolen personal information of identity theft victims. *Id.* By opening bank accounts using counterfeit identifications, members of the conspiracy were able to evade detection.

Brandon perpetrated this scheme with others since 2013, *id.*, causing hundreds of thousands in losses, and millions of dollars in attempted losses, *id.* ¶ 27.

### B. Procedural History

On November 16, 2017, Brandon pleaded guilty pursuant to a plea agreement to the four counts in the Indictment. *Id.* ¶ 7. In the plea agreement, the Government calculated that the applicable Guidelines range was 33 to 41 months' imprisonment plus a mandatory minimum term of 24 months' imprisonment to be served consecutively to any sentence. *Id.* That calculation was derived from a criminal history category of I and an offense level of 20. Included in the calculation of the offense level was a two-level enhancement, pursuant to § 2B1.1(b)(11)(C), for the unauthorized transfer and use of a means of identification of another person. *Id.* The PSR adopted the Guidelines calculation set forth in the plea agreement.

It appears that the Guidelines calculation in the plea agreement incorrectly applies an enhancement pursuant to § 2B1.1(b)(11)(C). As the defendant pled guilty to 18 U.S.C. § 1028A, the Guidelines set forth in § 2B1.6 apply to that count. Comment 2 to § 2B1.6 indicates that the enhancement under § 2B1.1(b)(11)(C) is inapplicable where the defendant is separately being sentenced for violating 18 U.S.C. § 1028A. Accordingly, the defendant's offense level should have been calculated as level 18, and the applicable Guidelines range is 51 to 57 months' imprisonment, including a mandatory minimum term of two years' imprisonment. On March 1, 2018, the Government conferred with U.S. Probation Officer Johnny Y. Kim, who concurs that this is the correct calculation of the applicable Guidelines range.

### C. Discussion

A sentence within the applicable Guidelines range is necessary in this case to reflect the seriousness of the defendant's offense, to afford adequate deterrence of future criminal conduct, and to protect the public. *See* 18 U.S.C. § 3553(a)(2)(A)-(C).

*First*, a significant prison sentence is necessary to reflect the seriousness of the defendant's conduct, to promote respect for the law, and to provide just punishment. The conspiracy outlined herein resulted in hundreds of thousands of dollars in losses to victims. Additionally, the conspiracy involved the theft of victims' identifying information. Indeed, the defendant and his co-conspirators actively mined for data on their victims, conduct internet research on their victims so that they could more effectively steal their victims' identities. Notably, and contrary to defense counsel's suggestion, this was not a mere "transgression" by the defendant. For years, since at least 2013, the defendant perpetrated this fraud scheme: it appears it was his sole source of income; he recruited and managed others; and he profited extensively.

Defense counsel argues that the fraud Guidelines are draconian. (Dkt. No. 33 at 7.) But the case that defense counsel relies on, *United States v. Gupta*, 904 F. Supp. 2d 349 (S.D.N.Y. 2012), is inapposite. Judge Jed Rakoff's criticism in that case was directed at high-loss cases involving the use of intended loss as a proxy for the seriousness of the crime. That critique is inapplicable here as the loss amount is driven by *actual* loss to the victims. Moreover, if anything, the Guidelines applicable here do not take into account the substantial non-monetary harm to

victims that come from the theft of their identities.  Here, the fraud Guidelines appropriately reflect the seriousness of the offense.

*Second*, a significant sentence of imprisonment is necessary to afford adequate deterrence to the defendant.  The defendant has over a dozen prior arrests or convictions.  As U.S. Probation notes in the PSR, "Brandon appears to pose a moderate-to-high risk of recidivism" because he was a "leader or manager," his "arrest record dates back to 1992" and includes "multiple arrests," he was previously arrested "for possessing stolen property" and "forgery," and he has "violated prior terms of probation."  PSR at 24.  Thus, it appears the defendant's prior terms of incarceration of two years or less did not deter him from future wrongdoing.  A substantial sentence—one within the Guidelines range—is necessary to deter the defendant from future wrongdoing.

*Third*, a sentence within the Guidelines range serves the interest of general deterrence.  General deterrence is an important sentencing interest in the context of check kiting, because it is profitable, and easy to implement and conceal.  The costs involved in stealing checks are minimal, and the risks of getting caught are substantially lower than many other theft offenses.  Victims do not know that they are victimized and cannot report the fraud until well after funds have been stolen from their accounts and they have been substantially harmed. Accordingly, efforts by banks and law enforcement to detect and apprehend individuals who steal checks often occur a substantial time after the crime has occurred.  A substantial sentence is needed to counterbalance the fact that this type of crime carries low costs and is hard to detect in a timely way.

*Lately*, the defendant's arguments for a variance carry little weight.  The defendant argues, though counsel, that he should receive a below-Guidelines sentence because his pre-trial confinement has been "unduly harsh."  (Dkt. No. 33 at 5.)  Notably, though, the defendant has been held at MDC like many other similarly-situated defendants.  While he may miss his family, his submission says nothing about why the conditions of his confinement have been unduly harsh: he has not been held in solitary confinement, his time at MDC has not exceeded a year, and he has not alleged anything about his time in custody that has been unusual or inappropriate.  At sentencing, the defendant could request that the Court recommend his assignment to a correctional facility with geographic proximity to his family, which would abate the issues raised in his submission.  The defendant also argues that a lengthier sentence will delay his obligation to pay restitution.  But, again, this is a consideration for all defendants, and as the PSR notes, Brandon has had "unsteady and unverifiable employment," he has not paid taxes, and "the source of [his] income, at least for a four-year period between 2014 and 2017, is unknown or uncorroborated."  PSR at 24.  Accordingly, there is no assurance that the defendant's release from custody will lead to immediate payment of restitution.

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence on the defendant within the applicable Guidelines range, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

    Very truly yours,

    GEOFFREY S. BERMAN
    United States Attorney

by: /s/
    Catherine E. Geddes
    Nicolas T. Roos
    Assistant United States Attorneys
    (212) 637-2421 / -1114